**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| GEORGE VASQUEZ, | : | |
| | : | Civil No. 09-2593 (KSH) |
| Petitioner, | : | |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| LARRY GLOVER, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

George Vasquez, <u>Pro</u> <u>Se</u>
56 Sandy Court, Apt. #5
Paterson, NJ 07522

Steven E. Braun, Esq.
Office of the Passaic County Prosecutor
401 Grand Street
Paterson, NJ 07505-2095
Attorney for Respondents

**HAYDEN, District Judge**

Petitioner, George Vasquez, was a prisoner at the Northern State Prison, Newark, New Jersey, at the time he submitted this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondents are Administrator Larry Glover, and the Attorney General of New Jersey.

For the reasons stated herein, the petition must be denied.

## BACKGROUND

### A.   Factual Background

The relevant facts are set forth in the opinion of the
Superior Court of New Jersey, Appellate Division ("Appellate
Division"), in petitioner's direct appeal.[1]   See Respondents'
Exhibits ("RE"), docket entry 41-5.

> While defendant and his girlfriend, Isabel Cruz,
> were returning from a Jersey City bar with defendant's
> brother and another woman, defendant threatened and
> assaulted Cruz and damaged her car.  Cruz filed a
> complaint against defendant alleging terroristic
> threats and informed Paterson police officer Khalil
> Munem of an assault by defendant the month prior, when
> he had placed a .9mm gun in her mouth.  She also
> reported having seen a sawed-off shotgun and a small
> silver gun in defendant's room.

> On March 11, 1006, after taking Cruz's statements,
> Detective Munem typed an arrest warrant for defendant.
> Around 1:00 p.m. Munem and three other detectives
> arrested defendant at his place of employment.
> Defendant denied he lived at 602 East 27th Street,
> claiming he had moved back to his mother's residence
> three weeks earlier.  Detective Munem confiscated
> defendant's house keys and went to 602 East 27th Street
> to verify defendant's residence.  He spoke with the
> landlord who showed him defendant's apartment.  The
> detective opened the door with defendant's keys and
> peered into the fully furnished room, but did not enter
> it.  Detective Munem immediately locked the door, left
> the scene, and obtained a search warrant around 4:00
> p.m.  Munem returned to defendant's room with the
> warrant, conducted a search, and seized a sawed-off

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding
instituted by an application for a writ of habeas corpus by a
person in custody pursuant to the judgment of a State court, a
determination of a factual issue made by a State court shall be
presumed to be correct.  The applicant shall have the burden of
rebutting the presumption of correctness by clear and convincing
evidence."

shotgun, a .9 mm BB gun, and a .25 caliber automatic
pistol. Ammunition and hollow nose bullets were also
found. The weapons and ammunition had been hidden in
the room under a reclining chair and were not visible
from the door when Munem tested the room key.

Upon arriving back at the station, Detective Munem
approached defendant in the holding cell. Defendant
was on the phone conversing in Spanish. The detective,
who speaks fluent Spanish, heard defendant say he was
arrested and charged with weapons possession and was
facing three years on each charge, and that the two
guns he had bought in Massachusetts and the Tipper gun
had been confiscated by police. Defendant asked the
person to tell Jose (defendant's brother) that if
anyone asked, to deny he lived at the apartment and
claim he had moved out three weeks ago. Defendant
further advised the listener to ask his brother to go
to his room at 602 East 27th and retrieve his
belongings.

An indictment was returned on June 6, 1996.
Defendant's case was called for various appearances,
conferences and for trial dozens of times over the
years. A motion to suppress was heard on December 14,
1998, the first day of a scheduled trial. Testimony
and arguments were heard on seven separate days through
March 1, 1999. On April 1, 1999, prior to the court's
ruling on defendant's suppression motion, the State
returned a superseding indictment adding the second-
degree charge of possessing a firearm after having been
previously convicted of robbery in the State of New
York.

See Appellate Division Opinion, Docket entry 41-5, pp. 5-6.

**B.** **Procedural Background**

A Passaic County Grand Jury returned an indictment charging

petitioner with terroristic threats; possession of a prohibitive

weapon; violations of permit regulations; and violation of

handgun regulations, all in violation of New Jersey state law.   A

3

charge of possessing a firearm after having been previously
convicted of robbery was added in a superceding indictment.

Various pretrial motions were held.  Trial was held in
Passaic County on April 10, 2001 through April 23, 2001.
Petitioner was found guilty of the terroristic threats charge,
the possession of a prohibitive weapon charge, and the
superseding possession of a firearm charge on April 25, 2001.  On
June 7, 2001, petitioner was sentenced to an extended term of 14
years imprisonment with a 7-year term of parole ineligibility.

Petitioner appealed.  On October 5, 2004, the Appellate
Division affirmed the conviction and sentence.  Petitioner filed
a petition for certification with the New Jersey Supreme Court,
which was denied on February 16, 2005.

On March 21, 2005, petitioner filed a motion for post-
conviction relief (PCR) in the sentencing court.  The judge held
a hearing and on March 27, 2007, issued an opinion denying the
PCR motion in its entirety.  The Appellate Division affirmed the
denial on September 24, 2008.  Petitioner's petition for
certification to the New Jersey Supreme Court was denied on April
23, 2009.

Petitioner filed this habeas petition on May 27, 2009.
Petitioner was advised of his rights pursuant to Mason v. Meyers,
208 F.3d 414 (3d Cir. 2000).  Respondents filed an Answer to the

petition and the available state court record on or about May 18,
2010.

C.   **Petitioner's Claims**

Petitioner cites eight grounds for relief in his habeas
petition:

1.   Discovery violations, because petitioner represented himself
pro se on his PCR motion and did not receive his files.

2.   Illegal/Unlawful arrest, because the arrest warrant was not
signed by a judge, but rather by the arresting officer.

3.   Speedy trial violation, because it took the state five years
to bring him to trial.

4.   Juror misconduct, because a juror overheard petitioner
making prejudicial comments about his defense in an
elevator.

5.   Illegal search and seizure, because an attorney testified at
the motion to suppress that the officer told him the search
was illegal.

6.   Conflict of interest, because of a contingency fee agreement
between petitioner and his attorney.

7.   Illegal sentence, because he should not have been subjected
to an extended term.

8.   Ineffective assistance of counsel, because he was not able
to raise an ineffective assistance of counsel claim on

direct appeal and he did not have his files in order to

raise it in his PCR motion.

(Petition, ¶ 12).

### 28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent

part:

> (a) The Supreme Court, a Justice thereof, a circuit
> judge, or a district court shall entertain an
> application for a writ of habeas corpus in behalf of a
> person in custody pursuant to the judgment of a State
> court only on the ground that he is in custody in
> violation of the Constitution or laws or treaties of
> the United States.
>
> With respect to any claim adjudicated on the
> merits in state court proceedings, the writ shall not
> issue unless the adjudication of the claim
>
>> (1) resulted in a decision that was contrary to,
>> or involved an unreasonable application of,
>> clearly established Federal law, as determined
>> by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on
>> an unreasonable determination of the facts in
>> light of the evidence presented in the State
>> court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court

precedent "if the state court applies a rule that contradicts the

governing law set forth in [Supreme Court] cases," or "if the

state court confronts a set of facts that are materially

indistinguishable from a decision of th[e] Court and nevertheless

6

arrives at a result different from [the Court's] precedent."
Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J.,
for the Court, Part II).  A state court decision "involve[s] an
unreasonable application" of federal law "if the state court
identifies the correct governing legal rule from [the Supreme]
Court's cases but unreasonably applies it to the facts of the
particular state prisoner's case," and may involve an
"unreasonable application" of federal law "if the state court
either unreasonably extends a legal principle from [the Supreme
Court's] precedent to a new context where it should not apply or
unreasonably refuses to extend that principle to a new context
where it should apply," (although the Supreme Court expressly
declined to decide the latter).  Id. at 407-09.  To be an
"unreasonable application" of clearly established federal law,
the state court's application must be objectively unreasonable.
Id. at 409.  In determining whether the state court's application
of Supreme Court precedent was objectively unreasonable, a habeas
court may consider the decisions of inferior federal courts.  See
Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits
of a claim is entitled to § 2254(d) deference.  See Chadwick v.
Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v.
Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims
presented to, but unadjudicated by, the state courts, however, a

7

federal court may exercise pre-AEDPA independent judgment.  <u>See</u>
<u>Hameen v. State of Delaware</u>, 212 F.3d 226, 248 (3d Cir. 2000),
<u>cert.</u> <u>denied</u>, 532 U.S. 924 (2001); <u>Purnell v. Hendricks</u>, 2000 WL
1523144, *6 n.4 (D.N.J. 2000).  <u>See</u> <u>also</u> <u>Schoenberger v. Russell</u>,
290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and
cases discussed therein).

The deference required by § 2254(d) applies without regard
to whether the state court cites to Supreme Court or other
federal case law, "as long as the reasoning of the state court
does not contradict relevant Supreme Court precedent."  <u>Priester</u>
<u>v. Vaughn</u>, 382 F.3d 394, 398 (3d Cir. 2004) (citing <u>Early v.</u>
<u>Packer</u>, 537 U.S. 3 (2002); <u>Woodford v. Visciotti</u>, 537 U.S. 19
(2002)).

Although a petition for writ of habeas corpus may not be
granted if the petitioner has failed to exhaust his remedies in
state court, a petition may be denied on the merits
notwithstanding the petitioner's failure to exhaust his state
court remedies.  <u>See</u> 28 U.S.C. § 2254(b)(2); <u>Lambert v.</u>
<u>Blackwell</u>, 387 F.3d 210, 260 n.42 (3d Cir. 2004); <u>Lewis v.</u>
<u>Pinchak</u>, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent
standards than more formal pleadings drafted by lawyers.  <u>See</u>
<u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404
U.S. 519, 520 (1972).  A pro se habeas petition and any

8

supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierlev, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

**DISCUSSION**

**A.   Claim Regarding Discovery Violations during PCR (Ground 1)**

In Ground 1, petitioner argues that he was not able to receive his files before defending his post-conviction relief motion, because he was told his files were lost of destroyed. As he was representing himself pro se, petitioner argues that he could not effectively litigation his sentence and conviction, and his PCR motion was denied. (Pet., ¶ 12A).

Petitioner's arguments concerning his PCR motion do not warrant habeas relief. Petitioner has no federal right to an evidentiary hearing or other relief denied by a state PCR court. Infirmities in a state PCR proceeding do not raise constitutional questions in a federal habeas action. See Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998) ("what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation"). Thus, errors in state post-conviction relief proceedings are collateral to the conviction and sentence and do not give rise to a claim for federal habeas relief. See Hassine, 160 F.3d at 954.

9

**B.   Claim Regarding Illegal/Unlawful Arrest (Ground 2)**

In Ground 2, petitioner contends that he is entitled to
habeas relief because the arrest warrant utilized to arrest him
was not supported by probable cause, and was not signed by a
judge, but rather by the arresting officer, and the arresting
officer's supervisor.   (Pet., ¶ 12B).

The Fourth Amendment, applicable to the States through the
Fourteenth Amendment, protects "[t]he right of the people to be
secure in their persons, houses, papers, and effects, against
unreasonable searches and seizures."   U.S. Const. amend. IV.
Although petitioner's arrest was a seizure, the police officer
who arrested him did not violate his Fourth Amendment rights
because, at the time of the arrest, the police officer had
probable cause to make it, i.e., "the facts and circumstances
within his knowledge and of which he had reasonably trustworthy
information were sufficient to warrant a prudent man in believing
that the [suspect] had committed ... an offense."   United States
v. Kithcart, 134 F.3d 529, 531 (3d Cir. 1998) (quoting Beck v.
Ohio, 379 U.S. 89, 91 (1964)).   Moreover, even if the police
officer lacked probable cause to arrest petitioner, his claim
fails on habeas review.   "An illegal arrest, without more, has
never been viewed as a bar to subsequent prosecution, nor as a
defense to a valid conviction."   United States v. Crews, 445 U.S.
463, 474 (1980); see also Gerstein v. Pugh, 420 U.S. 103, 119

(1975).  Thus, petitioner's illegal arrest claim does not raise even a colorable federal habeas claim, and must be denied.

## C.   Speedy Trial Claim (Ground 3)

In Ground 3 of his petition, petitioner argues that he was denied a speedy trial because "it took the State over 5 years to bring me to trial for an illegal weapon found in my home and not used in the commission of a crime."  Petitioner argues that he was arrested on March 11, 1996, and trial did not commence until April 10, 2001.  He states that a critical witness to his defense died of natural causes during the pendency of his case, prejudicing his defense.  He also claims that "three different judges and nine different prosecutors bounce[d] this case around for over (5) five years (over 45 court appearances)."  (Pet., ¶ 12C).

The Sixth Amendment provides, in pertinent part, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial .... "  U.S. Const. amend. VI.  The right to a speedy trial is "fundamental" and is imposed on the states by the Due Process Clause of the Fourteenth Amendment.  See Kloper v. North Carolina, 386 U.S. 213, 223 (1967); see also Barker v. Wingo, 407 U.S. 514 (1972).  In Barker, the Supreme Court set forth four factors to be weighed and balanced to determine whether the Sixth Amendment's guarantee of a speedy trial has been violated: (1) the length of the delay; (2) the

11

reason for the delay; (3) whether, in due course, the defendant
asserted his right to a speedy trial; and (4) the prejudice to
the defendant.  See id. at 530; see also United States v. Dent,
149 F.3d 180, 184 (3d Cir. 1998), cert. denied, 525 U.S. 1085
(1999).  As noted by the Court of Appeals for the Third Circuit,
"[t]he length of the delay figures into the speedy trial analysis
twice.  First, it is used to determine whether Barker is
triggered at all.  Hakeem v. Beyer, 990 F.2d 750, 759-60 (3d Cir.
1993).  If the delay is long enough to trigger Barker, it is then
analyzed as 'one factor among several,' and courts should measure
the 'extent to which the delay stretches beyond the bare minimum
needed to trigger judicial examination of the claim.'"  Conroy v.
Leone, 316 Fed. Appx. 140, 143 (3d Cir. 2009)(citing Doggett v.
United States, 505 U.S. 647, 652 (1992)).

The Appellate Division examined petitioner's speedy trial
claims at length, finding:

> We are satisfied that defendant's Sixth Amendment
> right to a speedy trial was not violated by the five-
> year delay between his arrest and trial in light of the
> four factors enumerated in Barker v. Wingo, i.e.,
> length of delay, reason for delay, the defendant's
> assertion of his right, and prejudice to the defendant,
> adopted by our Court in State v. Szima.  The delays in
> the numerous proceedings were for good reasons, and
> many were precipitated by defendant.  Pre-indictment
> conferences took place immediately following
> defendant's arrest and release.  About three months
> after defendant's arrest, the matter was presented to
> the grand jury and defendant was indicted one month
> later.  There were several judicial conferences before
> and after the indictment, as well as extensive plea
> negotiations through June 1998.  Defendant did not

12

> appear at the first listing of the case in October 19,
> 1998.  Due to complexities that arose during the
> suppression hearing, it lasted for five months.
> Further delays were occasioned by the filing of
> substantive motions, the appointment of new counsel for
> defendant, requests for adjournment by both counsel,
> the superseding indictment, defendant's untimely motion
> to dismiss the indictment, and the extension of the
> plea cut-off deadlines.  After trial, defendant fled to
> Michigan and could not be sentenced until extradited to
> New Jersey.  As to the third factor, defendant only
> perfunctorily asserted his right to a speedy trial in a
> June 17, 1999 letter to the court and a September 1999
> motion, without any factual or legal basis for his
> claim.  Moreover, defendant was not prejudiced by the
> five-year delay.  As he was not incarcerated during the
> time period between arrest and trial, his assertion
> that he had to "live" with the charges is unconvincing.
> Defendant's claim of prejudice due to the
> unavailability of a "critical" witness at trial is also
> weak.  Defendant had had almost two years to meet with
> his landlord prior to his death to ascertain his
> testimony and to be able to explain how that testimony
> would have impacted his case.

See Appellate Division Opinion, Docket entry 41-5, pp. 9-10

(internal citations omitted).

This Court agrees with the findings of the Appellate

Division that the Barker factors have not been met in order to

warrant habeas relief on petitioner's speedy trial claim.  A

review of the record supports the Appellate Division's findings.

Thus, the state courts' determination that petitioner's

speedy trial rights were not violated, in which the state courts

cited Barker, is neither contrary to nor an unreasonable

application of the governing Supreme Court case law.  Petitioner

is not entitled to relief on this claim.

D.     **Claim Regarding Juror Misconduct (Ground 4)**

In Ground 4 of his petition, petitioner argues that a juror overheard a conversation in the elevator.  In his brief on direct appeal (docket entry 41-12, at p. 55 of 199), petitioner noted that during trial, he was in an elevator with two friends, and told the friends, (1) that he wanted to testify at trial, (2) that he would have to tell the jury about his arrest in New York, and (3) referenced the shotgun he was charged with possessing. When they were exiting the elevator, a witness noticed a juror standing behind them looking directly at them.

The Appellate Division examined this claim on direct appeal. Quoting the a post-trial motion by the trial judge, the Appellate Division explained:

> Defendant's allegation of jury taint and request for a plenary hearing, asserted as part of a post-trial motion, was properly rejected out of hand by the trial judge as incredulous.  In finding defendant's contention lacked merit, Judge Clark aptly noted:

>> I very, very seriously doubt that this incident took place on the elevator.  To find out that a juror has possibly overheard you discussing an armed robbery conviction obviously would be an enormous event during a trial, particularly when you don't testify that they never heard about the sanitized conviction in the first place.  I believe if it had occurred, Mr. Vasquez would have brought it to the attention of Mr. Balady [his trial counsel].

>> Mr. Vasquez was very active and interested in his trial.  Mr. Balady has testified under oath here today that this was never reported to him.  Not only do I believe

14

that because he didn't record it, but I
believe it because it is the kind of event
that whether you recorded it or not, he would
have immediately brought it to my attention.
I have no doubt about that.

I would have voir dired Mr. Bellfield,
the juror in question, and then depending on
what he told me, if he had discussed it with
the other jurors, we probably would have
undoubtedly had a mistrial.  If he
represented he had not discussed it with the
other jurors, I would have excused Mr.
Bellfield and then made a decision as to
whether or not I in some general fashion
[would have] inquired of the other jurors as
to whether they had discussed anything
involving the case with Mr. Bellfield who was
being excused.

It is the kind of issue that would have
been of enormous importance.  I don't believe
for a minute that Mr. Balady would not have
reported that if it came to his attention.

And again, I made a further finding that
I very, very seriously doubt that the
conversation in front of the juror ever took
place.  The juror would have had an
obligation to come forward and tell me he
heard information.  I never heard from the
juror.  That's not dispositive.  But given
the active part that Mr. Vasquez plays in his
defense, both during the trial and now, it is
virtually inconceivable to me he would not
have told Mr. Balady about this.  And I
believe Mr. Balady fully when he says he
didn't tell him.  I consider this a non-issue
in this case.

See Appellate Division Opinion, Docket entry 41-5, pp. 11-12.

Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding
institued by an application for a writ of habeas corpus by a
person in custody pursuant to the judgment of a State court, a

15